IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN J. SMITH,                          )
                                         )
                    Petitioner           )
                                         )
        vs.                              )        Civil Action No. 07-1279
                                         )        Magistrate Judge Amy Reynolds Hay
JOSEPH NISH, Superintendent; THE         )
ATTORNEY GENERAL OF THE STATE            )
OF PENNSYLVANIA; THE DISTRICT            )
ATTORNEY OF THE COUNTY OF                )
WESTMORELAND,                            )
                                         )
                    Respondents          )


MEMORANDUM OPINION AND ORDER

HAY, Magistrate Judge

     Kevin J. Smith ("Petitioner"), a state prisoner, brings this habeas corpus petition pursuant

to 28 U.S.C. § 2254, challenging his convictions for aggravated assault and simple assault in

connection with the physical abuse of his infant son.  Because most of his issues are procedurally

defaulted, those issues afford Petitioner no relief.  As to the remaining issues, because Petitioner

fails to show that the state courts' adjudication of his claims were contrary to or an unreasonable

application of Supreme Court precedent, the petition should be denied.

**Relevant Facts and Procedural History**

     On April 6, 2001, a jury found Petitioner guilty of aggravated and simple assault.  Dkt.

[15-4] at 12.  The basis of the aggravated assault charge was the fact that the child had received

skull fractures.  State Court Record ("SCR") at Dkt. 39.   The basis for the simple assault charge

was the fact that the child suffered several broken ribs.  Id.   At trial, Petitioner took the stand and

1

testified that the child's skull fractures were the result of the child accidentally falling and hitting his head.   The Commonwealth's expert, Dr. Herr, who was the physician that examined Petitioner's child at the emergency room, testified that the skull fractures were non-accidental. Initially, when Petitioner was interviewed by the police at the hospital, he denied that the child had fallen, as he had denied this when questioned by hospital staff.  At trial, the Commonwealth argued that Petitioner's initial false statements were evidence of his consciousness of guilt.

At the pre-trial state habeas proceedings and at trial, Petitioner was represented by Attorney Thomas Ceraso, who subsequently was granted leave to withdraw.  See Dkt. [15-4] at 12.  Petitioner retained new counsel.  Id. Petitioner was sentenced to 7 to 14 years on the aggravated assault charge, and no further penalty was imposed on the simple assault charge.  Id., at 13.   On direct appeal, while represented by Patrick J. Thomassey, the following issues were raised in the appeal brief to the Superior Court:

> A. DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S HABEAS CORPUS MOTION?
> B.  DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S MOTION IN LIMINE?
> C.  DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL?

Dkt. [15-4] at 9.

A petition for allowance of appeal ("PAA") was filed by Attorney Thomassey. According to Petitioner, the same three issues raised in the appeal to the Superior Court were also raised in the PAA to the Pennsylvania Supreme Court.  Dkt. [1] at 3, ¶ 9(g)(6) "Grounds Raised."  The Pennsylvania Supreme Court denied the PAA on May 13, 2004.  SCR at Dkt. 77.

Thereafter, Petitioner filed a pro se PCRA petition.  SCR at Dkt. 79.  Counsel was

appointed in the person of Attorney James Silvis. Thereafter, Attorney Silvis filed an amended

PCRA petition in which only the following issues were raised: (1) Ineffective assistance of trial

counsel for: (a) failing to call important witnesses, especially Dr. Margaret Prather, to explain the

reasons for Petitioner giving inconsistent answers to the detectives, which inconsistent statements

the Commonwealth used to argue consciousness of guilt; (b) for failing to properly question

witnesses especially Petitioner's sister and brother-in-law, who would have testified that

Petitioner's infant son did not seem to be in acute pain as testified to by a Dr. Herr on behalf of

the Commonwealth; and (c) for failing to request a jury instruction to the effect that even with a

false statement being made by Petitioner, which might indicate consciousness of guilt, the burden

was still on the Commonwealth to prove that a crime, in fact occurred. SCR at Dkt. 82. The

PCRA court denied relief. On appeal, Attorney Silvis filed a no-merit letter. The Superior Court

denied Petitioner relief. Although Petitioner filed a pro se PAA, the State Court record provided

to this Court did not contain such nor did the Respondents provide such in their answer.[1]

Petitioner then filed pro se the current Section 2254 petition, Dkt. [1], which is 35 pages

long. He raises many issues and sub-issues therein which were not raised in the state court.

Briefly, Ground One is a claim that "Trial Counsel Was Ineffective" Dkt. [1] at 5, ¶ 12, in a

multitude of various ways, including but not limited to the following: "During Trial he failed to

Question witnesses who would have testified that my allegid [sic] victim was not in pain. . . ."

---

[1] That the Respondents did not do so is of no consequence in light of the following. Petitioner's
PAA was filed after the May 9, 2000 adoption by the Supreme Court of Pennsylvania of Rule # 218 of
Judicial Administration, which essentially made resort to the Pennsylvania Supreme Court from a
Superior Court's decision in a criminal case unnecessary for purposes of federal habeas exhaustion. In
Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004), the Court of appeals explained that "[o]rder No. 218
renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court
remedies under § 2254(c)."

Dkt. [1] at 6; "failed to call several Psychologist's [sic] to testify that I have no stress, anger or mental problem's [sic] and that they all believe that I made false statement's [sic] due to fatigue, illness and fear of my children being placed into foster care, and not to cover any guilt as A.D.A. Koenig continued to raise to the Jury[,]" Dkt. [1] at 7 to 8; and "Trial Counsel failed to request appropriate Jury Instruction's [sic] and argue that false statement's [sic] alone are insufficient to prove guilt." Dkt. [1] at 7. We deem these three issues to be substantially the equivalent of the three issues raised in the counseled PCRA petition and hence not procedurally defaulted. The remaining claims of trial counsel's ineffectiveness were not raised in the direct appeal in the state courts and were not raised in the amended PCRA petition and, hence, were waived under state law as will be explained below.

Ground Two raised in the Section 2254 petition is that "Appellate counsel's [sic] were Ineffective," Dkt. [1] at 14, "Ground Two." Petitioner does allege that his direct appeal counsel, i.e., Attorney Thomassey, was ineffective for failing to raise the ineffectiveness of trial counsel Ceraso for Ceraso's alleged failures raised in Ground One. However, the alleged ineffectiveness of Attorney Thomassey was never raised in the amended PCRA petition and hence was waived under state law. Ground Three raised in the Section 2254 petition is that the "Trial Court made error's [sic] that resulted in an unjust conviction." Dkt. [1] at 17, including the trial court's failure to suppress Petitioner's false statements, Dkt. [1] at 18 ("Trial Judge refused to suppress the false statement's [sic] that I made, when I was not in custody, Accused of [a crime, or] read the Miranda Warning's"[sic]). Petitioner also alleges that the PCRA trial court committed errors. Dkt. [1] at 18. Ground Four is that the "Prosecutor's conduct and Statement's [sic] deprived me of a fair trial[.]" Dkt. [1] at 20. Ground Five is that "Appellate Counsel was ineffective for

Failure to fully argue that there were no intentional injurie's" [sic]. Ground Six is that "P.C.R.A. counsel was Ineffective for failure to fully and properly argue Ineffectiveness of Trial Counsel for failure to call a witness" namely, Dr. Margaret Prather, who was "willing to testify that she believed that I made the false statement's [sic] due to fatigue, illness and fear of my children being placed into foster care if I admitted to having a careless accident with my son, which would have undercut the Prosecution's case that I made these statement's [sic] to cover guilt." Dkt. [1] at 26. Ground Seven is that "P.C.R.A. Counsel was Ineffective for failing to challenge instruction given by Trial Judge regarding my false statement's" [sic]. Dkt. [1] at 28. Ground Eight was that "Trial Counsel was ineffective for failing to fully and properly question witnesses that my alleged victim was not in pain." Dkt. [1] at 30. Petitioner also filed a 120 page brief in support of his habeas petition. Dkt. [2].

The Respondents filed an answer, raising inter alia, the procedural default defense. Dkt. [15]. Petitioner filed a traverse, Dkt. [17], an addendum, Dkt. [18], and a pleading that the Court deemed to be a supplemental traverse, Dkt. [28].

### Discussion

#### A. Procedural default

The doctrine of procedural default essentially provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural

default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).

There are two exceptions to the procedural default doctrine. An issue that was not properly raised in the state system and, therefore, procedurally defaulted, may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' Murray v. Carrier, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d 178, 193 (3d Cir. 2000) (citations and some internal quotations omitted). A second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts v. Vaughn, the Court explained this exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in

the conviction of one who is actually innocent...."  [Murray v. Carrier, 477 U.S. 478]  at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. Schlup v. Delo, 513 U.S. 298, 326 (1995).

Id.

Even if a respondent in a federal habeas proceeding fails to raise the issue of procedural default, the court may do so sua sponte.  Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999) ("Our conclusion that a federal habeas court possesses the authority, in its discretion, to decide a petitioner's claim on the basis of procedural default despite the failure of the state to properly preserve procedural default as a defense comports with the unanimous decisions of the other courts of appeals that have considered this question.   The First, Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits all agree that a federal court, in the exercise of its judicial discretion, may address procedural default despite the failure of the state to preserve or present the issue properly.") (citing cases).   Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995)(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson,  150 F.3d 1324, 1327  (11th Cir. 1998).

Lastly, if a petitioner has clearly committed a procedural default and has not shown either

cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice. See, e.g., Wainwright v. Sykes; Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999); McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278, at *3 (7th Cir. 1994) ("Ordinarily, when a district court concludes that a petitioner's claims are barred by the doctrine of procedural default the petition is dismissed with prejudice."); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993) ("We do not understand why the magistrate judge recommended dismissal without prejudice. If federal habeas review of Petitioner's claim is barred by his state procedural default, or if Petitioner's claims are without merit, the petition should be dismissed with prejudice.").

Pennsylvania regularly and consistently applies a rule of waiver in multiple contexts at least outside of capital cases. An issue not raised at the trial level or at the appellate level is waived. Commonwealth v. Agie, 296 A.2d 741, 741 (Pa. 1972)("We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court.")(citations omitted); Commonwealth v. Steffish, 365 A.2d 865 (Pa. Super. 1976); Commonwealth v. Perea, 381 A.2d 494, 496 (Pa. Super. 1977)("The reason our review is confined to the one issue is because the other issues were not raised in the trial below or in post-verdict motions. The appellate courts of Pennsylvania have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal."); Commonwealth v. Mitchell, 445 A.2d 721, 723 (Pa. 1982)(issues not raised on appeal are waived).

All of the issues of trial counsel's ineffectiveness - - other than the three raised in the counseled PCRA petition - - that Petitioner raises in Ground One were waived in the state

courts because they were never presented in the counseled amended PCRA petition. That Petitioner may have raised some of the same claims of trial counsel's ineffectiveness in his pro se PCRA petition is of no legal significance because that pro se petition was superceded by the amended counseled petition. The state courts do not permit hybrid representation[2] and, thus, the state PCRA court addressed only the three issues raised in the counseled PCRA petition. Trowery v. Walters, 45 Fed.Appx. 206, 207 (3d Cir.2002) ("Trowery raised his claim of ineffectiveness of counsel for failure to file a direct appeal in his two pro se PCRA petitions. But the amended petition filed by counsel did not specifically raise this issue. The claim therefore was never properly presented before the PCRA court."); Andrews v. Grace, NO. CIV.A. 07-502, 2007 WL 3146819, at *3 (E.D.Pa. Oct. 5, 2007)("Andrews did not properly present to the state court the claim of ineffective assistance of counsel for failing to seek the trial judge's recusal and the claim is now waived due to independent and adequate state procedural rules. Although Andrews raised the ineffective assistance of counsel issue in his pro se amended PCRA petition, . . . it was not raised in his counseled PCRA petition, . . . and the PCRA court reviewed only the claims raised in Andrews' counseled petition").

The only apparent claim of cause that Petitioner would now have is that his PCRA counsel was ineffective for failing to raise in the amended PCRA petition all of the issues of trial

_____

[2] Cox v. Blaine, NO. CIV.A. 00-5188, 2003 WL 22238986, at *5 (E.D.Pa., July 23, 2003) ("First, the appellate courts of Pennsylvania do not condone "hybrid" representation. **See Commonwealth v. Ellis**, 398 Pa.Super. 538, 581 A.2d 595 (1990). The court will decline to consider a pro se filing when a counseled brief or petition is filed either before, at the time of, or after the pro se filing is received. **Commonwealth v. Castro**, 766 A.2d 1283, 1287 n. 11 (Pa.Super. 2001). Since the claim was not included in the counseled filing, the court never considered its merits. Therefore, the state court was deprived of the opportunity to consider the merits of the claim."), **aff'd**, 174 Fed.Appx. 84 (3d Cir. 2006).

counsel's ineffectiveness that Petitioner now raises herein.  However, in the context of habeas petitions filed by state prisoners, the ineffectiveness of counsel can serve as cause **only** where one has a federal constitutional right to counsel.  Payne v. Allen, 539 F.3d 1297, 1314 (11th Cir. 2008)("To show cause for failing to follow a state procedural rule, the ineffective assistance of counsel must occur during a stage when a petitioner had a [federal] constitutional right to counsel."); Williams v. Turpin, 87 F.3d 1204, 1209 (11th Cir. 1996)("attorney error constitutes 'cause' only when there is a [federal] constitutional right to counsel at the stage when the error is committed.");  Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1991) ("Ineffective assistance of counsel 'supplies "cause" only when the [federal] Constitution requires the state to assure adequate legal assistance.'").  However, Petitioner has no federal constitutional right to counsel at the PCRA stage, notwithstanding any state law right to counsel he may have had.  Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted).  More specifically, there is no substantive due process or equal protection right to counsel in state post conviction proceedings even if State law provides a right to counsel.  See Pursell v. Horn, 187 F.Supp.2d 260, 372-73 (W.D. Pa. 2002), wherein the Court observed that

> Some cases go even further than Finley and Giarratano, suggesting that there is no federal right to state post-conviction counsel even when state law itself requires such counsel. For example, in Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992), the Third Circuit held that post-conviction review counsel's ineffectiveness did not excuse a procedural default, even when state law itself required effective counsel for such proceedings, because there was no federal constitutional right to counsel in state post-conviction proceedings. See also In re Goff, 250 F.3d 273, 275-76 (5th Cir. 2001) (barring a second petition based on the ineffectiveness of state post-conviction lawyer, even when state law itself required

the appointment of counsel). In both Caswell and Goff, the petitioners argued that
their state post-conviction counsel were ineffective. And in both cases, state law
itself required the appointment of counsel for post-conviction proceedings.
Nevertheless, the Caswell and Goff Courts rejected the petitioners' claims for a
simple reason: the due process clause does not require counsel for state
post-conviction proceedings, whether state law requires such counsel or not.

This Court agrees and because there is no federal right to counsel in PCRA proceedings, a

violation of the state law right to effective assistance of counsel, assuming there is such a State

law right, fails to merit the relief of habeas. Jacobs v. McDaniel, 139 F.3d 905 (Table); 1998 WL

78440, at *1 (9th Cir. 1998)("Jacobs' claim that he was denied due process because the state

habeas court refused to appoint counsel at the evidentiary hearing fails for lack of a right to

counsel in state collateral proceedings."); Gibson v. Public Advocacy Dept., 35 F.3d 565 (Table),

1994 WL 462160, at *2 (6th Cir. 1994)("Similarly, neither the Due Process Clause of the

Fourteenth Amendment nor the equal protection guarantee of 'meaningful access' to the courts

requires the defendants to appoint counsel for Gibson [in state post conviction proceedings]. See

Murray v. Giarratano, 492 U.S. 1, 7 (1989). Thus, it is beyond a doubt that Gibson has no federal

constitutional right to counsel . . . ."). Accordingly, the many procedurally defaulted claims of

trial counsel's ineffectiveness cannot be addressed on the merits by this Court.

In light of the foregoing analysis regarding the lack of a federal right to counsel at the

PCRA stage, it is appropriate to sidetrack briefly from the procedural default discussion to

address directly Ground Six and Ground Seven, both of which raise ineffective assistance of

counsel claims against Petitioner's PCRA counsel. Given that there is no federal right to counsel

during PCRA proceedings, as demonstrated above, notwithstanding any state law right to such,

the ineffectiveness of counsel at the PCRA stage simply does not raise a cognizable claim in

federal habeas proceedings. Given no federal constitutional right was implicated based upon the alleged ineffectiveness of PCRA counsel, there is no ground for federal habeas relief provided by such alleged ineffectiveness. See, e.g., Bishop v. Epps, 265 Fed.Appx. 285, 289 -90 (5th Cir. 2008)("Section 2254 of Title 28 of the United States Code guarantees post-conviction habeas relief only on the basis that a petitioner's conviction or sentence violates the Constitution or laws of the United States. Although individual states, for independent reasons, may decide to create a right to counsel for post-conviction review, the decision has no basis in the Constitution. . . . . Because Bishop has no right to counsel in post-conviction proceedings, he can allege no unconstitutional denial of the effective assistance of post-conviction counsel."), cert. denied, 128 S.Ct. 2975 (2008); Mitchell v. Watkins, 252 Fed.Appx. 874, 877 (10th Cir. 2007) (Court denied Certificate of appealability where the District Court concluded that "Claim (7) failed to state a valid basis for federal habeas relief because neither the Constitution nor federal law provides for a right to counsel in state post-conviction proceedings" and the Circuit Court concluded that "no reasonable jurist 'could debate whether (or, for that matter, agree that)' any of these claims 'should have been resolved in a different manner or that [they] were adequate to deserve encouragement to proceed further.'"), cert. denied, 128 S.Ct. 2914 (2008); Sulie v. Farley, 41 F.3d 1511 (Table), 1994 WL 622247, at *2 (7th Cir. 1994)("Since there is no constitutional right to effective assistance of counsel in state post-conviction proceedings . . ., there is no federal habeas relief for ineffective assistance of state post-conviction counsel."); Chaney v. McCotter, 5 F.3d 545 (Table), 1993 WL 345526, at *3 (10th Cir. 1993)("habeas relief not available based on ineffective assistance of attorney appointed for state court collateral post-conviction proceedings because no constitutional right to counsel attaches to such proceedings")(citing, Williams v.

Lockhart, 849 F.2d 1134, 1139 (8th Cir. 1988)). Accordingly, neither Ground Six nor Ground Seven affords Petitioner relief.

Alternatively, even if we assumed for the sake of argument that there was some federal right to post conviction counsel, this issue affords no relief because Congress, who created the right for state prisoners to come to federal court to obtain a writ of habeas corpus,[3] has affirmatively provided that ineffectiveness of counsel at the post conviction stage of proceedings can provide no basis for relief. 28 U.S.C. § 2254 (i)("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Hence, Grounds Six and Seven cannot provide a basis for relief.

Similarly, any claims of errors allegedly committed by the state courts in the course of PCRA proceedings simply fail to provide any grounds for relief in federal habeas proceedings. "[H]abeas proceedings are not the appropriate forum for [the petitioner] to pursue claims of error at the PCRA proceeding." Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004); see also Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation."). Hence, any and all of Petitioner's claims regarding errors allegedly committed by the state courts during the PCRA

---

[3] Ex parte Bollman, 8 U.S. (4 Cranch) 75 (1807)(state prisoners have no federal habeas corpus right unless Congress creates one); Ex parte Dorr, 44 U.S. (3 How.) 103, 105 (1845)(the Court ruled that "neither this nor any other court of the United States, or judge thereof, can issue a [writ of] habeas corpus to bring up a prisoner, who is in custody under a sentence of execution of a state court, for any other purpose than to be used as a witness.").

proceedings fail to afford a basis for relief in these federal habeas proceedings.

We return now to analyzing the fact that Petitioner procedurally defaulted all but three of his claims of trial counsel's ineffectiveness for failure to raise these issues in the amended counseled PCRA petition.   We have determined that Petitioner procedurally defaulted these claims.  We now determine that he has failed to carry his burden to show that, despite the procedural default of these claims, we should consider them on the merits.  We already decided above that Petitioner did not establish "cause and prejudice" so as to overcome the procedural default.  We now decide that Petitioner has failed to show, as is his burden, that not addressing these procedurally defaulted claims of trial counsel's ineffectiveness would constitute a "miscarriage of justice."

The phrase "miscarriage of justice" has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'").  Moreover, "actually innocent" means factual innocence and not just legal innocence.  See Calderon v. Thompson, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence" a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims.  First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at

trial.  Schlup, 513 U.S. at 327-28.  Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' Id. at 327." Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).  See also  Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)(implicitly requiring that in order to constitute "new evidence," the evidence must not merely be evidence that was not presented at the time of trial but the evidence must have not been available at time of trial, noting that "[a] defendant's own late-proffered testimony is not 'new' because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway.").   It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.  In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by Sawyer and Carrier does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.[4]

The first prong of the two part test, i.e., whether the proffered evidence is new, requires that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence."  Amrine v. Bowersox, 238 F.3d at 1028. Petitioner's claim of actual innocence flounders on this ground.  Petitioner points to no "new reliable evidence" of actual innocence.  He does claim that there were two doctors who were

---

[4]  There does appear to be one narrow exception to the  requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." See, e.g., United States v. Garth, 188 F.3d 99 (3d Cir. 1999).  However, for reasons explained in Sweger v. Chesney, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and Gale v. Rozum, NO. 06-CV-1266, 2006 WL 2092572 (M.D. Pa. July 25, 2006), the narrow Garth exception does not apply here. Whereas in Garth, a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

willing to testify in support of him but that Petitioner did not become aware of these two doctors until after trial. Dkt. [2] at 17; Dkt. [2-2] at 23. While he argues that he did not in fact become aware of these two doctors until after trial, he utterly fails to establish that with the exercise of reasonable diligence, he could not have discovered the existence of these two doctors earlier. This is all the more true, when it appears that it was Petitioner's family who apparently contacted at least one of the doctors, although Petitioner did not say when the family did so. See Dkt. [2] at 24.[5] Moreover, it appears that their testimony related to the rib fractures, which was the basis of the simple assault and for which Petitioner received no punishment and did not relate to the aggravated assault charge and conviction for which he is now in custody. See Dkt. [2] at 17; Dkt. [2-2] at 23.

Accordingly, Petitioner has procedurally defaulted all of his claims of trial counsel's ineffectiveness other than the three issues of trial counsel's ineffectiveness raised in the counseled amended PCRA petition. Thus, all but three of the claims of trial counsel's alleged ineffectiveness raised in Ground One are procedurally defaulted.

In Ground Two, Petitioner raises a number of claims that his direct appeal counsel was ineffective. To the extent that he raises these claims of ineffective assistance of direct appeal

---

[5] Petitioner is simply wrong in his contention that if he succeeds in establishing that the evidence was insufficient, then he does not need to show cause for procedurally defaulting any claim of insufficiency of the evidence. Dkt. [28] at 3. Smith v. State of Ohio Dept. of Rehabilitation and Corrections, 463 F.3d 426, 432 (6th Cir. 2006)("Smith asserts that the ineffective assistance of his appellate counsel-namely, his appellate lawyer's failure to notify him promptly of the Ohio Court of Appeals decision denying his claims-serves as cause to overcome the procedural default of his double jeopardy and insufficient evidence claims."); McNeil v. Franklin, 187 Fed.Appx. 908, 909 (10th Cir. 2006). Even if the rule were otherwise and he would not have to establish cause in order to have his insufficiency of the evidence claim addressed on the merits, Petitioner has not, as discussed below, established that the evidence was insufficient to convict him or, at least, he has not shown that the state courts' adjudication of this claim was contrary to or an unreasonable application of Supreme Court precedent.

counsel as a way of layering his claims of ineffective assistance of trial counsel, he need not do so any longer in order to have his claims of trial counsel's ineffectiveness addressed directly in state court, nor would he have to do so in order to have those claims of trial counsel's ineffectiveness addressed here in federal habeas so long as these trial counsel ineffectiveness claims were properly preserved in the PCRA process.  Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).[6]  However, to the extent that Petitioner seeks to raise herein claims of direct appeal counsel's ineffectiveness independent of any trial counsel ineffectiveness claims, we find such claims procedurally defaulted because no such claims were presented in the counseled PCRA petition and the above reasoning with respect to the ineffective assistance of trial counsel claims being procedurally defaulted because not raised in the counseled PCRA petition applies equally to Petitioner's claims of direct appeal counsel's alleged ineffectiveness.

_____

[6] At the time Petitioner filed his direct appeal (i.e., around August 16, 2001) with new counsel in the person of Attorney Thomassey, Petitioner was required under pain of waiver to raise the ineffectiveness of his trial counsel, Attorney Ceraso.  Commonwealth v. Hubbard, 372 A.2d 687 (Pa. 1977), overruled by, Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).  Under Hubbard, the rule was that one was required to raise the ineffectiveness of counsel at the first opportunity new counsel had, or the issue of the prior counsel's ineffectiveness was waived.  As a consequence of this rule, if the new counsel failed to do so, the only proper way under State law to reach the first counsel's ineffectiveness was to "layer" the claims of ineffectiveness, i.e., to claim that new counsel (typically appellate counsel) was ineffective for failing to raise first (typically, trial) counsel's ineffectiveness.  All this changed with the decision in Commonwealth v. Grant, which held that claims of ineffectiveness of trial counsel should not be raised until PCRA proceedings and when raised then, such claims could be raised directly and not via a layered ineffectiveness claim.  The Grant decision went further and held that this new rule of waiting to raise ineffectiveness of trial counsel until the PCRA stage, applied retroactively to all cases then pending on direct appeal.  Petitioner's case was, at the time of the Grant decision, pending on direct appeal as the Superior Court did not decide the appeal until December 2, 2003.  Hence, Petitioner was no longer subject to the old Hubbard rule, requiring that he raise his claims of trial counsel's ineffectiveness via a layered claim.  However, the Grant decision did nothing to the State rule of waiver that issues not raised in a counseled PCRA petition were waived and could not be raised for the first time on appeal of a PCRA petition and this would appear to include independent claims of appellate counsel's ineffectiveness that are unrelated to claims of trial counsel's ineffectiveness.  That is to say, if a petitioner is claiming appellate counsel's ineffectiveness for failing to raise an issue other than trial counsel's ineffectiveness, that claim of appellate counsel's ineffectiveness would seemingly have to be raised at the PCRA trial court level in a counseled PCRA petition or be waived.

This same reasoning applies equally to Ground Four (i.e., prosecutorial misconduct due to improper statements at trial), and Ground Five (i.e., Appellate counsel was ineffective for failing to fully argue that there were no intentional injuries). These issues were never raised in the direct appeals process nor were they raised in the counseled amended PCRA petition. Accordingly, they are procedurally defaulted. In addition, as discussed above, Petitioner fails to show cause any prejudice or miscarriage of justice and, so, these claims cannot be addressed on the merits.

## B. AEDPA applies

We next turn to those issues we find are not procedurally defaulted. First, we address the three issues of trial counsel's ineffectiveness that were not procedurally defaulted because they were in fact raised in the counseled PCRA petition and were addressed by the Superior Court on the merits. Because the state courts addressed most of these issues on the merits, the deferential standards of AEDPA applies. Bell v. Miller, 500 F.3d 149, 154 (2d Cir. 2007) ("because the state court decision 'provided a full analysis' of Bell's ineffective assistance claim, it constituted an 'adjudication on the merits,' triggering the more deferential standard of review required by" AEDPA).

The Superior Court reviewed the three claims of trial counsel's alleged ineffectiveness finding that the claims lacked merit. It appears that with respect to the first two claims of ineffectiveness (i.e., counsel failed to call Dr. Prather to provide a possible explanation for Petitioner initially giving inconsistent stories other than possibly revealing consciousness of guilt and failing to properly question Petitioner's sister and her husband about their observations of the infant not being in apparent pain), the Superior Court concluded that Petitioner failed to establish prejudice. See Dkt. [15-7] at 41 ("In rejecting Smith's first and second ineffectiveness claims,

wherein Smith alleges that his trial counsel was ineffective for failing to call a witness at trial, and for failing to properly question two witnesses, the PCRA court determined that Smith failed to meet the prejudice prong of the ineffectiveness standard with regard to these two issues. . . .").
The Superior Court then went on to quote extensively from the PCRA court's opinion as well as from the no-merit letter filed by Petitioner's PCRA counsel. The Superior Court then concluded that "[f]ollowing our independent review of the record, we conclude, as did the PCRA court and Attorney Silvis, that Smith's claims of trial counsel ineffectiveness are wholly without merit, and we affirm the order dismissing his PCRA petition." Dkt. [15-7] at 44. It appears to this Court that the Superior Court determined Petitioner's first two issues failed to establish prejudice. Petitioner has not carried his burden to show that this disposition was contrary to or an unreasonable application of then extant Supreme Court precedent. Accordingly, these two issues do not merit relief.

The third issue of trial counsel's alleged ineffectiveness that was not procedurally defaulted was that trial counsel was ineffective for failing to request appropriate jury instructions. The jury instruction that Petitioner alleged should have been given was an instruction to the effect that even if the jury found that Petitioner gave false statements to the authorities about what had happened, those statements alone could not establish Petitioner's guilt and it would still be the burden of the Commonwealth to prove a crime occurred.

The Superior Court addressed this issue as follows: "both the PCRA Court and Attorney Silvis concluded that this allegation lacks merit because, as the trial transcript shows, the trial court properly instructed the jury in this regard by informing them that if they believed Smith made false or contradictory statements, they could, but were not required to, consider the

statements as tending to prove his consciousness of guilt." Dkt. [15-7] at 43 to 44. In a footnote accompanying the immediate preceding quote from the Superior Court, that Court quoted the trial transcript for the instruction actually given to the jury. That instruction read as follows:

> There was evidence that tended to show the defendant made false and contradictory statements when he was questioned by his wife, by medical personnel, and by the county detectives. If you believe that the defendant made these false or contradictory statements, you may consider them as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and weigh this evidence along with all other evidence in the case.

Id., at 44. The Superior Court appears to have concluded as to this issue that because the trial court gave such an instruction, trial counsel could not be deemed ineffective for not requesting another instruction. The reasoning appears to be that trial counsel could not be ineffective for failing to request a jury instruction that was already given. In the counseled PCRA petition, the issue was raised as follows: "Defendant believes that trial counsel erred in not requesting that the jury instruction be read indicating that even with a false statement being made by the Defendant that might indicate consciousness of guilt, the burden is still on the Commonwealth to prove that a crime, in fact occurred." SCR at Dkt. 82, ¶ 22. In his pro se PCRA petition, Petitioner appeared to be more specific as to the type of instruction he sought. He had wanted trial counsel to request a jury instruction to the effect that "false statements alone are insufficient to prove guilt." SCR at Dkt. No. 79, Addendum p.1 (next to last paragraph).

This court concludes that Petitioner has not demonstrated that the Superior Court's adjudication of the claim as presented to it was unreasonable application of Supreme Court precedent. Even if this court were to review *de novo* the more specific claim as found in the pro se PCRA petition, i.e., that false statements alone are insufficient to convict, it would conclude

that Petitioner cannot demonstrate prejudice from this "failure" because his false statements were not the only evidence of his guilt (as discussed below), and the instruction actually given was sufficiently close to the instruction he wanted, to essentially serve the same purpose of assuring that the jurors did not convict him on the basis of his false statements alone.

In Ground Three Petitioner raises several claims of the trial court's alleged errors. All but three of the claims of alleged trial court error are procedurally defaulted due to the fact that they were not raised on direct appeal and/or they were not raised in the counseled PCRA petition.

One of the claims that was is not procedurally defaulted is that the trial court erred in failing to suppress Petitioner's statements made to police which were false statements concerning what had happened to Petitioner's child and which were introduced at trial as evidence of consciousness of guilt. This issue was raised via the motion in limine and on appeal to the Superior Court in the direct appeal issue of whether the trial court erred in denying Petitioner's motion in limine. Hence, this issue is not procedurally defaulted. However, the claim is not cognizable herein. The claim raised in the state courts was a state law claim. Dkt. [15-4] at 18 to 21. Petitioner specifically conceded that, at the time he was questioned by the police at the hospital, he was not in custody and he was not required to be read his Miranda rights and he was not yet formally accused of any crime. Dkt. [15-4] at 18 ("It was conceded that nothing occurred [at the hospital questioning] which would have made the interview custodial in nature and it was further acknowledged that no Miranda rights were required to be given"); id., at 19 ("At the time of the interviews given by Appellant he was neither in custody or accused criminally."). These are concessions that the statements did not violate his Fifth Amendment rights nor his Sixth

Amendment rights.[7]  See, e.g., Texas v. Cobb, 532 U.S. 162, (2001)("Fifth Amendment right, unlike Sixth, applies only in custodial interrogation")(citing Rhode Island v. Innis, 446 U.S. 291, 300, n. 4(1980)); Doggett v. U.S., 505 U.S. 647, 663 n.2 (1992)("it is instructive to compare the Sixth Amendment's speedy trial right to its right to counsel, which also applies only to an 'accused.'  The right to counsel, we have held, does not attach until 'at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'  United States v. Gouveia, 467 U.S. 180, 188 (1984) . . . . In other words, for purposes of the right to counsel, an 'accused' must in fact be accused of a crime; unlike the speedy trial right, it does not attach upon arrest.").

In fact, it appears that, in connection with this suppression issue,  the only claims raised in the state courts were claims that the trial court's failure to suppress the statements violated state law.  Dkt. [15-4] at 20 (arguing that the statements violated Pa.R.Evid. Nos. 401; 402 and 403). If Petitioner seeks to raise such state law claims herein, he fails then to raise any claims cognizable in a federal habeas proceedings.  A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law.  28 U.S.C. §2254(a).  Smith v. Phillips, 455 U.S. 209 (1982); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991).  Violations of state law or procedural rules alone are not sufficient; a petitioner

_____

[7]  To the extent that Petitioner could have argued that the statements he made should have been suppressed pursuant to the Fourth Amendment (unlikely a successful argument, given that the questioning took place at the hospital and, pursuant to Petitioner's concessions, was a purely voluntary interview, and hence there was no "search" or "seizure" as is required for a Fourth Amendment claim), such would afford him no relief here.  Even if Petitioner were to try to raise a Fourth Amendment claim seeking suppression of the statements herein, the rule of Stone v. Powell 428 U.S. 465 (1976), inter alia, bars our entertaining of the claim.  Cardwell v. Taylor, 461 U.S. 571 (1983) (extending rationale of Stone v. Powell to include custodial statements made after an illegal arrest).

must allege a deprivation of federal rights before habeas relief may be granted.  Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991).  Because Petitioner raised this claim solely as one of state law in the state courts, we find that Petitioner waived any federal law claim with respect to the trial court's denial of the motion in limine, and hence, procedurally defaulted any such federal claim in this court.  Duncan v. Henry, 513 U.S. 364, 365-66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.");  Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989) ("both the legal theory and the facts supporting a federal claim must have been submitted to the state court"), implied overruling on other grounds recognized in, Hull v. Freeman, 932 F.2d 159 (3d Cir. 1991).[8]

---

[8]  The only other potential constitutional claim, related to the trial court's failure to suppress his statements, which Petitioner could have is that the trial court's alleged errors denied him substantive due process.  A claim that one was denied "due process" is a claim that one was denied "fundamental fairness."  See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' Spencer v. Texas, 385 U.S. 554, 563-564 (1967)[.]");  Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness");  Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial").

   "Fundamental fairness" is very narrowly defined.  As the Court explained in Dowling v. United States, 493 U.S. 342, 352 -353 (1990):

   We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly. As we observed in Lovasco, supra, at 790,

      "Judges are not free, in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness

We turn next to the claim that the trial court erred in denying Petitioner's motion for judgment of acquittal, which was a motion claiming, at the close of the Commonwealth's case, that the prosecution failed to establish their case or, in other words, there was insufficient evidence to convict Petitioner of a crime. This claim was raised on direct appeal and addressed by the Superior Court. Dkt. [15-4] at 48 to 50 and Dkt. [15-5] at 2. The Superior Court held that there was sufficient evidence to prove that Petitioner engaged in aggravated assault of the child. Petitioner failed to establish, as is his burden, that the Superior Court's disposition of this claim was contrary to or an unreasonable application of then extant Supreme Court precedent. Indeed, the Superior Court's disposition was neither.

---

> and to 'disregard the limits that bind judges in their judicial function.' Rochin v. California, 342 U.S. 165, 170 (1952).... [They] are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' Mooney v. Holohan, 294 U.S. 103, 112 (1935). . . .

The admission of false statements made for the inference that the person making them is conscious of his guilt simply does not qualify as violating fundamental fairness either as a general proposition or under the facts of Petitioner's case. See, e.g., U.S. v. Horton, 873 F.2d 180, 181-82 (8th Cir. 1989), wherein the Court noted that

> Horton's second contention is that the district court erred in allowing the government to present in its case-in-chief evidence that Horton had falsely stated his name as Thomas Deon Hill during a pretrial booking interview. Horton claims that the use of this evidence violated his fifth amendment rights to due process and a fair trial because it was irrelevant and was more prejudicial than probative. See Fed.R.Evid. 401, 403.
>    Evidence of false identification is relevant and admissible to show consciousness of guilt. See United States v. Eggleton, 799 F.2d 378, 381 (8th Cir. 1986). The balancing of the probative value of such evidence against its prejudicial effect is committed to the district court's discretion.

(footnote omitted). Instantly, even if we were to review this putative due process claim *de novo*, given that the state courts did not address this federal constitutional issue because Petitioner had not presented it as such, but merely as one of state evidence law, the Court would conclude that the admission of these false statements did not render Petitioner's trial fundamentally unfair.

Petitioner essentially contends that Dr. Herr's testimony was internally contradictory and so equivocal that the testimony was incompetent as evidence of his guilt. Dr. Herr testified that the child suffered from "multiple blunt force traumas, high force blunt force to the head with a minimum of two blows." SCR Trial Transcript ("TT") at 112 lines 4 to 5. She further testified to a reasonable degree of medical certainty that these injuries were non accidental. Id., at lines 9 to 16. She also testified on multiple occasions that the skull injuries were life threatening. See, e.g., SCR, T.T. at 182, lines 24 to 25. This evidence taken with the other evidence of record, including the inconsistent stories Petitioner gave, and evidence that the injuries occurred roughly at a time when Petitioner was the lone adult with the child, when read in a light most favorable to the Commonwealth, as the verdict winner, could establish that it was Petitioner who caused the injuries, which the Doctor opined were non-accidental. This provides sufficient evidence for any rational juror to conclude that Petitioner engaged in aggravated assault.[9] United States v. Silman, __ Fed. Appx. __, __, 2008 WL 2874128, at *1 (3d Cir. 2008)("In reviewing the sufficiency of the evidence, '[w]e must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of a crime beyond a reasonable doubt.'" (quoting United States v. Cartwright, 359 F.3d 281, 286 (3d Cir.

_____

[9] As explained by the Superior Court in Petitioner's case:

Aggravated assault is defined in 18 Pa.C.S.A. § 2702, which states in pertinent part, as follows:

**(A) Offense defined.**– A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

Dkt. [15-4] at 41.

2004)).

Petitioner argues that Dr. Herr's testimony is so inconsistent as to render it incompetent as evidence. Petitioner contends that Dr. Herr testified that the fractures could have been caused by one blow which would be consistent with his version of the events, i.e., the child fell off of Petitioner and hit his head on the floor. However, Dr. Herr repeatedly testified that it was not one blow that caused the skull fractures. See, e.g. SCR, T.T. at 139, lines 12 to 19. She also testified that the baby could not have sustained the injuries which he did sustain by the fall which Petitioner described as causing the injuries. Id., at p. 162, line 20 to p. 163, line 3. The closest that Dr. Herr comes to saying anything that could be construed as inconsistent is on cross examination when she testifies that "you can get multiple fractures with one blow, **if** it spreads across the suture line. These [multiple fractures seen in the medical tests, i.e., CAT scan and X-rays] are not from a simple fall." (emphasis added). SCR T.T. at 164, lines 18 to 20. Taken in a light most favorable to the Commonwealth, this testimony and the inference it permits, establishes the child did not, contrary to Petitioner's argument,[10] suffer from one blow because the multiple fractures did not spread across the suture line, and in fact, the injuries displayed did not occur from a fall. It is true that Dr. Herr concedes that a fall could cause skull fractures, SCR, TT at 165, lines10 to 11, however, she unequivocally testified that the multiple skull fractures that Petitioner's son displayed were not from a fall. SCR, TT at 164, lines17 - 21.

It is true that Dr. Herr was not able to say whether the multiple blunt force trauma arose from something hitting the infant's head or from the infant's head hitting something. Furthermore, it is true that under cross examination, Dr. Herr spoke in terms of "a blow" or

---

[10] Dkt. [2] at 44.

"blow" as in blow to the head in the singular, however, she never once testified that Petitioner's child suffered only one blow to the head. When she referred to blow in the singular, within the context of the cross-examination, the focus was not on the number of blows to the head, rather, the focus was whether the child's head was hit (as in an object was moving and struck the head) or whether the child's head hit something (as in the child was in motion, e.g., falling and the moving head hit a stable object). SCR, T.T. at p. 185, line 20 to p. 186, line 23. She testified that she could not tell whether the blunt force trauma was from an object hitting the child's stationary head or whether the child's head was in motion and hit something. That she could not do so, however, is not legally significant, because it is irrelevant to establishing aggravated assault given that the perpetrator of the aggravated assault could have hit the child's stationary head with an object or taken the child's head and hit the head against a stationary object and given that Dr. Herr's testimony positively excluded an accidental injury.[11]

_____

[11] Most, if not all of Petitioner's arguments concerning Dr. Herr's testimony misconstrues the transcript and her testimony. See Dkt. [2] at 44 to 45. As to Dr. Herr's testimony regarding "a blow," it was Petitioner's attorney who phrased the question in terms of "a blow." SCR TT at p. 186, line 5. Dr. Herr simply responded in kind. The question at trial asked by Petitioner's attorney which referred to "a blow" was referencing Dr. Herr's testimony at the preliminary or Children's Bureau hearing which was the genesis of the phrase "a blow." Taken in context, it is clear that the testimony at the preliminary or Children's Bureau hearing is entirely consistent with the testimony at trial that Petitioner's son suffered multiple fractures in the skull from multiple blunt force traumas. The following ensued at the preliminary or Children's Bureau hearing:

Q    The different fractures that were noted; were you able to form an opinion as to whether they were caused by a single trauma or multiple trauma?
A    [by Dr. Herr] Because there were multiple fractures in different areas, it was believed that they were due to multiple different trauma or multiple different blows I should say.
Q    When you say blunt force trauma; what mechanism would be used in order to create that trauma?
A    A blow of some sort, either it could be a fist or an instrument of some sort against the head.

Dkt. [18-2] at 11, lines 14 to 24.

Petitioner's last claim of error against the trial court that was not procedurally defaulted is that the trial court erred in denying the state habeas corpus petition, which serves, under state law, as a way to test whether there was a prima facie case presented at the preliminary hearing. Petitioner maintained that there was not a prima facie case presented at the preliminary hearing. It appears that Petitioner presses this issue here as well. The issue provides no basis for relief because claims concerning the lack of a prima facie case presented at a preliminary hearing are essentially rendered moot after a trial, wherein a criminal defendant is convicted of the crimes beyond a reasonable doubt. United States v. Mechanik, 475 U.S. 66, 70 (1986)("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."; United States v. Tulk, 171 F.3d 596, 598 (8th Cir. 1999) ("any injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt"); Powers v. Dinwiddie, No. CIV-07-661-R, 2008 WL 4447059, at *14 (W.D.Ok. Sept. 26, 2008) ("Respondent is correct that the sufficiency of the evidence presented at a preliminary hearing presents only a question of state law error that is not cognizable in a federal habeas proceeding."). Accordingly this issue provides no basis for relief.

Because all of Petitioner's claims are either procedurally defaulted or do not merit relief,

---

Those of Petitioner's arguments that do not misconstrue the record outright, depend wholly upon a construction of the transcript in a light most favorable to him, drawing all inferences in favor of him and against the Commonwealth. This is not the law. See, e.g., Jackson v. Virginia, 443 U.S. 307, 326, (1979)("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); Farnsworth v. Edwards, 947 F.2d 948 (Table), 1991 WL 218007, at *2 (7th Cir. 1991) ("This court must review a habeas corpus petition by construing the evidence in the light most favorable to the government.").

the petition is properly dismissed.

**Certificate of Appealability**

Section 2253 of Title 28 U.S.C. generally governs appeals from district court orders

regarding habeas petitions.  Section 2253 essentially provides in relevant part that a certificate of

appealability, which is a prerequisite for allowing an appeal to a Court of Appeals, should not be

issued unless the petitioner "has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253 (C)(2).  Petitioner has not made such a showing because he has not

shown that reasonable jurists would disagree with either the substantive findings nor the

procedural findings.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a

certificate of appealability is properly denied.

An appropriate Order follows.

Dated:  15 October, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEVIN J. SMITH,                          )
                                         )
                    Petitioner           )
                                         )
        vs.                              )        Civil Action No. 07-1279
                                         )        Magistrate Judge Amy Reynolds Hay
JOSEPH NISH, Superintendent; THE         )
ATTORNEY GENERAL OF THE STATE            )
OF PENNSYLVANIA; THE DISTRICT            )
ATTORNEY OF THE COUNTY OF                )
WESTMORELAND,                            )
                                         )
                    Respondents          )


ORDER

        AND NOW, this 15th day of October, 2008, for the reasons set forth in the accompanying

Opinion, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is DENIED, as

is a Certificate of Appealability.

        Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal

from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that

our denial of a certificate of appealability does not prevent him from doing so, as long as he also

seeks a certificate of appealability from the court of appeals.  See Federal Rule of Appellate

Procedure 22(b)(1).

                                                /s/ Amy Reynolds Hay
_____United States Magistrate Judge



cc:     Kevin J. Smith
        ET-0993

SCI Waymart
P.O. Box 256
Waymart, PA 18472-0256

Leo J. Ciaramitaro, Esquire
Westmoreland County District Attorney's Office
by Notice of Electronic Filing